IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RHONDA RAE JENNER GEHANT,       )
*Personal Representative of the Estate of*   )
*JEROME J. GEHANT, deceased,*    )
    Plaintiff,                  )
                                )
    v.                          )        Civil Action No.  2:20cv381 (RCY)
                                )
FOSTER WHEELER ENERGY            )
CORPORATION, *et al.*,           )
    Defendants.                 )
————————————————————————)

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 40).  The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J).  For the reasons stated below, the Court will deny Defendant's Motion for Summary Judgment (ECF No. 40).

## I. FACTUAL ALLEGATIONS

Jerome J. Gehant ("Gehant") served in the United States Navy ("Navy") from March 23, 1967 through December 21, 1970. (Am. Compl. ¶ 4, ECF No. 66.)  Gehant's first and only assignment, after attending boilerman training, was on the *USS America*. (Mem. Supp. at 8, ECF No. 41; Resp. Opp'n at 5, ECF No. 42.)[1]  Gehant spent the duration of his service as a boiler technician. (Mem. Supp. at 8-9.)

---

[1] The Court employs the pagination assigned to all documents referenced herein by the CM/ECF docketing system, except for transcripts which will be cited using the page and line numbers as contained in the original document.

The Navy contracted with Foster Wheeler Energy Corp. ("Foster Wheeler" or "Defendant"[2]) to manufacture boilers for aircraft carriers, including the *USS America*, which was laid down in 1961 and launched in 1964. (*Id.* at 8.)  Gehant performed maintenance on the boilers, which included cleaning, repairing, and replacing gaskets. (*Id.* at 9.)  Plaintiff also alleges that Gehant dealt with insulation on the boilers. (Resp. at 6-7.)  Plaintiff alleges that the insulation, gaskets, insulating cement, and packing on, around, and inside the boilers contained asbestos. (*Id.* at 7-8.)  While performing maintenance on the boilers, Gehant claims to have been exposed to and to have inhaled asbestos dust. (Am. Compl. ¶ 19.)

Plaintiff alleges that the Foster Wheeler boilers did not contain warnings about the dangers of asbestos. (*See* Am. Compl. ¶¶ 17-18.)  Plaintiff contends that Foster Wheeler knew that asbestos and asbestos-containing products posed a significant health risk.  (*Id.* ¶ 22.)

On May 24, 2019, Gehant was diagnosed with malignant mesothelioma. (*Id.* ¶ 5.)  Plaintiff alleges that this condition was caused by the asbestos Gehant was exposed to during his service in the Navy. (*Id.* ¶ 1.)  Gehant died as a result of his mesothelioma on August 12, 2021. (*Id.* ¶ 29.) Rhonda Rae Jenner Gehant was named personal representative of Gehant's estate. (ECF No. 59.)

## II. PROCEDURAL HISTORY

On July 22, 2020, Defendants removed this action from the Circuit Court for the City of Norfolk to the United States District Court for the Eastern District of Virginia. (ECF No. 1.)  The case was assigned to Judge Arenda L. Wright Allen.  Defendants filed copies of their Answers on July 22, 2020. (ECF Nos. 4-12.)

---

[2] The action was originally brought against multiple Defendants. However, as a result of stipulations of dismissal and bankruptcy petitions, Foster Wheeler Energy Corp. is the only remaining active Defendant. (*See* ECF Nos. 24, 31-32, 48, 49-50, 53, 56-58, 60.)  As such, "Defendant" will only refer to Foster Wheeler.

On January 5, 2021, the action was reassigned to the undersigned. On January 12, 2021, an Order stayed the case for four of the Defendants that had previously filed bankruptcy petitions (ECF No. 24.)  From March 13, 2021 to September 28, 2021, Plaintiff stipulated to the dismissal of all the remaining Defendants, with the exception of Foster Wheeler, and the Court issued orders dismissing those Defendants from this action. (ECF Nos. 31-32, 48, 49-50, 53, 56-58, 60.)

On April 29, 2021, Foster Wheeler filed a Motion for Summary Judgment and a Memorandum in Support. (ECF Nos. 40-41.)  Plaintiff filed a Response in Opposition on May 13, 2021. (ECF No. 42.)  Foster Wheeler filed a Reply on May 19, 2021. (ECF No. 43.)  On June 3, 2021, Plaintiff filed a Notice of Supplemental Authority. (ECF No. 46.)  Foster Wheeler filed a Response on June 4, 2021. (ECF No. 47.)  On October 5, 2021, Foster Wheeler filed a Notice of Supplemental Authority. (ECF No. 62.)  Plaintiff filed a Response on October 8, 2021. (ECF No. 63.)

On September 24, 2021, Plaintiff filed a Motion for Leave to File First Amended Complaint and to Substitute Party Plaintiff. (ECF No. 59.)  The Court issued an Order granting said motion on September 28, 2021. (ECF No. 60.)  Plaintiff filed an Amended Complaint on November 1, 2021. (ECF No. 66.)

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure provide the standard of review for this case.  Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The Court need only consider the cited materials . . . ." Fed. R. Civ. P. 56(c)(3); *see Arvon v. Liberty Mut. Fire Ins. Co.*, No. 20-1249, 2021 WL 3401258, at *3 (4th Cir. Aug. 4, 2021)  The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).  The

evidence must be viewed "in the light most favorable to . . . the nonmovant, and draw all

reasonable inferences in her favor." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639,

645 (4th Cir. 2002).

## IV. DISCUSSION

Defendant's Motion for Summary Judgment rests on three grounds: (1) Plaintiff cannot

meet its burden to establish that Defendant owed Gehant a duty to warn under the *DeVries* test,

(2) Plaintiff's claims are barred by the government contractor defense, and (3) there is no causal

connection between Defendant's alleged failure to warn and Plaintiff's claimed injuries. (Mem.

Supp. at 6, ECF No. 41.)

### A. Duty to Warn - *DeVries* Test

Until the Supreme Court's ruling in *Air & Liquid Systems Corp. v. DeVries*, federal and

state courts were split between three different analytical approaches for maritime duty to warn

claims when the manufacturer's product required incorporation of a dangerous part in order for

the product to function as intended.  *See* 139 S. Ct. 986 (2019). The most lenient approach was

the foreseeability standard, which instructed that a "manufacturer may be liable when it was

foreseeable that the manufacturer's product would be used with another product or part, even if

the manufacturer's product did not require use or incorporation of that other product or part." *Id.*

at 993.  On the other side of the spectrum was the bare-metal defense, which instructed that a

manufacturer was not liable if it "did not itself make, sell, or distribute the part or incorporate the

part . . .  even if the product required incorporation of the part and the manufacturer knew that

the integrated part was likely to be dangerous for its intended uses." *Id*.  The Supreme Court

went with the third approach, a middle ground, under which "a manufacturer does have a duty to

warn when its product *requires* incorporation of a part and the manufacturer knows or has a

4

reason to know that the integrated product is likely to be dangerous for its intended uses." *Id.* at 993-94 (emphasis in original).  The Supreme Court held that "a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Id.* at 996.

### 1. The Product Requires Incorporation of a Part

The first prong of the *DeVries* test is whether the defendant's product required incorporation of a part that is dangerous. 139 S. Ct. at 995.  The Supreme Court further explained the meaning of "required" by describing three situations when a product "requires" an integrated part: "(i) a manufacturer directs that the part be incorporated, (ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part, or (iii) a product would be useless without the part." *Id.* at 995-96 (internal citations omitted).  The Court finds that there is a triable issue of fact pertaining to whether Defendant directed that the asbestos-containing part be used.  Considering that Plaintiff only needs to establish a triable issue on one of the three scenarios to satisfy this prong of the test, this opinion will discuss only the "directed use" scenario.

Defendant argues that its product did not require the integration of an asbestos-containing third-party product. (ECF No. 41 at 19.)  Defendant argues that the Navy "controlled every aspect of the design, manufacture, testing and acceptance of every vessel and all the equipment and machinery within its vessels." (Mem. Supp. at 11.)  Defendant contends that the Navy's oversight and control extended to the written material that accompanied the boilers. (*Id.* at 13.)  The Navy engaged in a process of reviewing, collaborating, and approving the manuals of equipment on its vessels. (*Id.* at 14.)  Due to the strict Military Specifications ("MilSpecs")

published by the Navy, the Navy directed Defendant to incorporate asbestos-containing parts, not the other way around. (*Id.* at 19.)

Plaintiff argues for a more expansive definition of "required" than the three situations described in *DeVries*. Relying on a District of Massachusetts case, *Sebright v. General Electric Co.*, 525 F. Supp. 3d 217 (D. Mass. 2021), Plaintiff argues that the inquiry should not be whether the Defendant's product required asbestos insulation but whether it required heat insulation generally to function as intended. (Resp. Opp'n at 11, ECF No. 42.) Plaintiff also advances an argument that would fail under the "directed use" scenario. Plaintiff argues that the Navy would have used the boiler manual provided by Defendant to determine what products to integrate into the boilers on the *America*. (*Id.* at 13.) Plaintiff's expert, Capt. R. Bruce Woodruff ("Woodruff"), stated that he believes the Navy "would have looked at the [Defendant's] drawings to see what the insulation was supposed to be." (Woodruff Dep.52: 6-14, ECF No. 43-1.) Further, Woodruff stated that he believed "the [shipyards] had to follow the detailed design specs of [the] manufacturer, as long as they complied with [the Navy's requirements]." (*Id.* at 64: 5-13.) The boiler's technical manual contains several diagrams that include asbestos-containing products. The diagram of the "Boiler Brickwork" contains a list of materials that includes a type of insulating cement that contains asbestos. (Resp. Opp'n Ex. 4 at 29-30, ECF No. 42-4.) The list of materials for the "Fuel Oil Burner" includes gaskets made with asbestos. (*Id.* at 25-26.) By including asbestos-containing products in the technical manual, Plaintiff argues that Defendant directed their use.

The Court will not adopt the definition of "required" used by the *Sebright* Court. In *Sebright*, the court stated:

> It is therefore not necessary, under prong one of *DeVries*, to discuss whether the GE turbines would have "required" asbestos insulation and whether alternatives to asbestos insulation materials were available at the time. The proper inquiry is

whether the turbines "required" heat insulation at all in order to function properly for their intended uses.

525 F. Supp. 3d at 237-38.  When describing the question before the Court in *DeVries*, Justice Kavanaugh wrote, "[t]his maritime tort case raises a question about the scope of a manufacturer's duty to warn.  The manufacturers here produced equipment . . . [t]he equipment required asbestos insulation or asbestos parts . . . ." *DeVries*, 139 S. Ct. at 991.  The opinion does not state that "the equipment required insulation or gaskets;" it specified that it required "asbestos insulation."  Further, in explaining why it rejected a foreseeability test, the Supreme Court stated:

> Many products can foreseeably be used in numerous ways with numerous other products and parts. Requiring a product manufacturer to imagine and warn about all of those possible uses—with massive liability looming for failure to correctly predict how its product might be used with other products or parts—would impose a difficult and costly burden on manufacturers, while simultaneously overwarning users. In light of that uncertainty and unfairness, we reject the foreseeability approach for this maritime context.

*DeVries*, 139 S. Ct. at 994.  *Sebright*'s interpretation would bring the standard too close to a foreseeability test.  The *DeVries* test is concerned with the integration of *hazardous* parts, not with the mere possibility of generalized integration of parts. *See In re Asbestos Products Liability Litigation*, 547 F. Supp. 3d 491, 491 n.1 (E.D. Penn. 2021) ("It is the fact that the part contributes to the overall danger of the product that is the key to this prong, not just that the product requires a certain non-dangerous part.")  The Court finds that the appropriate inquiry is whether the boilers required asbestos-containing parts.

The United States District Court for the Central District of California determined that there was a triable issue of fact regarding whether Foster Wheeler required asbestos parts based on the precise wording of the MilSpecs. *Dennis v. Air & Liquid Systems Corp.*, No. CV 19-9343, 2021 WL 3555720, at *12 (C.D. Cal. Mar. 24, 2021).  In that case, the court noted that the MilSpecs indicated that "asbestos was used often – not that it was mandated. *Id.* at *12.

In this action, Defendant points to the MilSpecs for boilers, MIL-B-18381, which it attached as an exhibit to its memorandum in support. (*See* ECF No. 41-4.)  In its review of these MilSpecs, the Court found one instance where the MilSpecs mentioned asbestos. In the requirements for drums and headers, the MilSpecs state "[w]here spiral wound metal-asbestos gaskets are used the metal shall be . . ." (*Id.* at 10, § 3.5.10.)  This is inconclusive, as it could indicate that the manufacturer had an option to use a different type of gasket, in which case this specification would not apply.

The District Court for the District of New Jersey also found Foster Wheeler's inclusion of asbestos-containing products in its design drawings created a genuine dispute, despite Foster Wheeler's argument that the Navy originally specified inclusion of those parts. *See Hammell v. Air & Liquid Sys. Corp.*, No. 14-00013, 2020 WL 5107478, at *6 (D.N.J. Aug. 31, 2020).  As previously noted, the boiler manual included diagrams with asbestos-containing cement and gaskets. (*See* Resp. Opp'n Ex. 4 at 25-26, 29-30.)

There is a triable issue of fact as to whether the boiler manual directed the Navy to incorporate asbestos-containing parts into Defendant's boilers.

### 2. The Manufacturer Knows or Has Reason to Know that the Integrated Product is Likely to be Dangerous for Its Intended Uses

Defendant argues that it did not know that the use of asbestos-containing gaskets integrated into its products would pose a risk to sailors handling those products. (ECF No. 41 at 21.)  It argues that at the time Plaintiff was in the Navy, there was a universal belief that the use of the asbestos containing gaskets did not pose a risk to sailors. (ECF No. 43 at 10.)

Plaintiff contends that at the time the *USS America* was constructed it was well known that asbestos was dangerous due to numerous studies. (ECF No. 42 at 10.)  Plaintiff alleges that Defendant was aware that asbestos was dangerous, and it still elected to use asbestos insulation for its boilers. (*Id.* at 15-16.)  In support of this allegation, Plaintiff points to an internal

memorandum of Defendant that summarizes a seminar that an employee in the research division attended. (Resp. Opp'n Ex. 7 at 2, ECF No. 42-7.)  The employee notes that the conclusion of the seminar was that "insulation dusts *are* a contributing factor to current increases in deaths due to: mesothelioma, lung carcinoma, pulmonary fibrosis, and calcification of the pleural plaques." (*Id.*)

Maritime asbestos litigation has been occurring across the country in recent years, often involving Foster Wheeler, and many courts have found that, based on the studies available at the time, manufacturers should have known of the danger of asbestos. *See, e.g., Dennis*, 2021 WL 3555720, at *14; *Hammell*, 2020 WL 5107478, at *6 ("There is ample evidence that Defendants knew or should have known . . . that exposure to asbestos dust could cause asbestosis or lung cancer . . . [a]nd there is evidence Defendants knew or should have known that removing and replacing asbestos-containing gaskets could expose a user to asbestos dust."); *Spurlin v. Air & Liquid Sys. Corp.*, 537 F. Supp. 3d 1162, 1174 (S.D. Cal. 2021) (finding that the publication of several studies in the 1950s and 1960s should have made companies aware of the dangers of integrated asbestos-containing parts on Navy vessels).

Therefore, there is a triable issue of fact regarding whether Defendant knew or had reason to know that the integrated parts were dangerous.

### 3. The Manufacturer Has No Reason to Believe that the Product's Users will Realize that Danger

Defendant argues that, "[f]ar from showing that [it]  had 'no reason to believe' that [the plaintiff] and similarly-situated sailors in the late 1960s and early 1970s would be aware of any possible hazards associated with the shipboard use of asbestos-containing materials, the evidence shows that . . .  the Navy already had an asbestos safety program in place which became even more robust during [plaintiff's] tenure." (Mem. Supp. at 21.)  In fact, the Navy was on the forefront of studying the hazards of asbestos. (Mem. Supp. at 21-22.)

9

Plaintiff argues that it is irrelevant whether the Navy was aware of the dangers of asbestos. (ECF No. 42 at 17.)  The proper inquiry is whether Defendant thought the end users of their product knew of the hazards. (*Id.*)  Plaintiff contends that since Defendant knew asbestos was dangerous and did not provide warnings, it could not reasonably believe that the sailors using the boilers would realize the danger. (*Id.*)

Other courts have found that, while the Navy was aware that asbestos was dangerous, the Navy was unaware that asbestos-based gaskets precented a risk to sailors. *See Hammell*, 2020 WL 5107478, at \*7; *Spurlin*, 537 F. Supp. 3d at 1174.  Plaintiff notes that the "Riblett Memo," a 1962 government memorandum, states that asbestos-containing packing and gaskets "are not considered a significant hazard." (Resp. Opp'n at 12; Mem. Supp. Ex. 13, ECF No. 41-13.)

Therefore, there is a triable issue of fact regarding whether Defendant reasonably believed that the end users of the product were aware of the danger.  Thus, there is a triable issue of fact on each of the three prongs of the *DeVries* test.

### B. Government Contractor Defense - *Boyle* Test

In 2016, the Fourth Circuit reversed its long-standing precedent that the government contractor defense is not available in failure to warn cases. *Ripley v. Foster Wheeler, LLC*, 841 F.3d 207, 209 (4th Cir. 2016.)  The court adopted the test elucidated by the Supreme Court in *Boyle v. United Technologies Corp.*, which held that "design defects in military equipment do not give rise to state-law tort claims if, '(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.'" *Id.* (quoting 487 U.S. 500, 512 (1988)).

In *Sawyer v. Foster Wheeler LLC*, the Fourth Circuit expressly modified the *Boyle* test for failure to warn claims. 860 F.3d 249, 256 (4th Cir 2017).  The test for failure to warn claims

10

requires the defendant to establish that "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." *Id.* (citing *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996)).

### 1. The Government Exercised its Discretion and Approved Certain Warnings

Defendant contends that the "prevailing view" is that an independent contractor does not have to prove that the government prohibited warnings, but instead, must prove that the government exercised discretion regarding the warnings placed on defendant's product. (Mem. Supp. at 23.) Defendant argues that the Navy's specifications did not allow equipment manufacturers to make independent determinations about the inclusion of asbestos warnings and that the Navy had final say on all warnings. (Reply at 14, ECF No. 43.)

Plaintiff argues that the Navy did allow asbestos warnings. (Resp. Opp'n at 18.) Nothing in the Navy's specifications precluded a warning about the hazards of asbestos. (*Id.* at 19.) Plaintiff alleges that Defendant must "prove that their complete failure to warn was compelled by the discretionary decision of a federal officer." (*Id.*)

Several courts have denied motions for summary judgment on the basis that there was a triable issue of fact related to whether the Navy prohibited manufacturers from placing warnings on their products. *See, e.g., Willis v. BW IP Int'l Inc.*, 811 F. Supp. 2d 1146, 1156 (E.D. Penn. 2011) (noting that the plaintiff had produced evidence that certain military specifications required warnings and had expert testimony that disputed the defendants' contention that the Navy prohibited manufacturers from placing warnings on their products); *Dennis*, 2021 WL 3555720, at *23 (finding that there was a triable issue of fact about whether military specifications required warnings); *Various v. Various*, 856 F. Supp. 2d 703, 712-13 (E.D. Penn.

2012) (finding that there was a dispute of material fact regarding whether the Navy prohibited, permitted, or required warnings); *Osterhout v. Crane Co.*, No. 5:14cv208, 2016 WL 10950439, at *9 (N.D.N.Y. Mar. 21, 2016) (denying summary judgment because Foster Wheeler had not proven that the Navy exercised discretion or prohibited it from providing warnings on its products); *Coulbourn v. Air & Liquid Sys. Corp.*, No. 13-08141, 2015 WL 12656236, at *9 (D. Ariz Feb. 11, 2015) (finding that the Navy instructed contractors through the MilSpecs to provide warnings in technical materials).

Similarly, Plaintiff has argued and put forth evidence that the Navy would have allowed a product manufacturer to put warnings on its products. In his report, Woodruff states that the Navy did allow warning labels and provides several examples of military documents allowing such labels. (ECF No. 42-6 at 11-14.)

Therefore, there is a triable issue of fact as to whether the government would have allowed the Defendant to place labels on its boilers warning of the dangers of asbestos.

### 2. The Contractor Provided the Warnings Required by the Government

Defendant argues that the government's review, acceptance, and use of the boilers and boiler manual is sufficient to satisfy this prong. (Mem. Supp. at 24.)  If Defendant's equipment and manual had not met the government specifications, then the Navy would not have allowed the equipment on its vessels. (*Id.* at 25.)

Plaintiff argues that the Navy's specifications actually required warnings regarding hazards inherent in products. (Mem. Supp. at 21.)  By failing to include an asbestos warning, Defendant did not conform to the specifications. (*Id.*)

Since there is a triable issue on whether the military specifications required equipment producers to place warnings on their products or prohibited them from doing so, the Court cannot determine at this stage whether Defendant confirmed to those same specifications.

### 3. The Contractor Warned the Government About the Dangers in the Use of the Equipment that were Known to the Contractor but Not to the Government

Defendant argues that the Navy was the "premier authority on the health hazards associated with asbestos in ship building and repair." (Mem. Supp. at 25.) Defendant's implication is that there were no dangers of asbestos known to Defendant that were not already known to the Navy.

Plaintiff contends that there is no evidence that Defendant warned the Navy of any hazards related to the exposure to asbestos from the construction, use, or regular maintenance of its boilers. (Resp. Opp'n at 22.) Plaintiff argues that the Navy's knowledge of the general hazards of asbestos is not sufficient to prove that the Navy knew of the hazards of the construction, use, or regular maintenance of integrated products containing asbestos. (*Id.*)

In *Willis v. BW IP International Inc.*, the defendants alleged that the Navy was aware of the dangers of asbestos since the 1920s and produced many of the same documents that Defendant has produced in this action. 811 F. Supp. 2d at 1157. In that case, the plaintiff's expert witnesses claimed that the Navy was not aware of the danger until the late 1960s or early 1970s and testified that the Navy relied on a report indicating that asbestos posed no threat to shipyard workers. *Id.* Several other courts have denied motions for summary judgment based on the same reasoning. *See, e.g., Spurlin*, 537 F. Supp. 3d at 1179 ("[T]he evidence gives rise to a reasonable inference that Defendants knew more about the dangers of their products than did the United States."). Plaintiff has produced similar evidence in this action, such as the Riblett Memo. (*See* Mem. Supp. Ex. 13.)

There is a triable issue of fact as to whether the Navy was unaware of the specific dangers of asbestos gaskets and insulation and whether Defendant was in a position to warn the Navy of those dangers.

### C. Causation

Defendant also contends that there is no issue of triable fact on the element of causation. First, Defendant argues that the Navy had superior knowledge of the hazards of asbestos and warned its sailors accordingly. (Mem. Supp. at 27.)  Second, Gehant admitted that he never saw any manuals or specifications pertaining to Defendant's boilers while on board the *USS America*. (*Id.*)  Thus, he never would have seen a warning had Defendant provided one. (*Id.*)  Third, Plaintiff and a fellow sailor testified that they relied on the Navy to instruct them on how to perform their jobs as boiler technicians and did not rely on civilian manufactures. (*Id.* at 28.)

Plaintiff argues that Defendant cannot disprove causation by simply blaming the Navy. (Resp. Opp'n at 22.)  Plaintiff notes that Gehant's co-sailor testified that he may have acted differently if Defendant had provided a warning about the health risks of asbestos. (*Id.* at 22-23.) Further, Plaintiff argues that this district has repeatedly held that the alleged negligence of an employer in failure to warn cases is at most concurring negligence not a superseding cause. (*Id.* 23-24.)  Plaintiff appears to address Defendant's contention that Gehant never saw the boiler manual by suggesting that "[t]he packages and the products, themselves, could have easily carried adequate warning labels and safety instructions. (*Id.* at 24.)

The standard for causation in a products liability case under maritime law, often referred to as the *Lindstrom* framework,  requires that the plaintiff show: "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor causing the injury he suffered." *Wilson v. AC&S, Inc.*, No. 4:14cv91, 2015 WL 7313391, at *3 (E.D. Va. Nov. 19, 2015) (quoting *Lindstrom v. A-C Products Liability Trust*, 424 F.3d 488, 492 (6th Cir. 2005); *see Hailey v. Air & Liquid Sys. Corp.*, No. 18-2590, 2020 WL 4732141, at *4 (D. Md. Aug. 14, 2020); *Chesher v. 3M Co.*, No. 3:15-02123, 2018 WL 1536573, at *4 (D.S.C. Mar. 29, 2018). "[S]ubstantial exposure for a substantial period of time" provides an inference that the product

was a substantial factor in causing the injury. *Lindstrom*, 424 F.3d at 492; *Wilson*, 2015 WL 7313391 at *3. "[A] mere showing that the defendant's product existed at a plaintiff's workplace" is insufficient under the standard. *Wilson*, 2015 WL 7313391 at *3. Courts applying the *Lindstrom* framework often incorporate the "regularity, frequency, and proximity" test from *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1163 (4th Cir. 1986). *See Dennis*, 2021 WL 3555720, at 16; *Hailey*, 2020 WL 4732141 at *4-5. Under *Lohrmann*, "[t]o support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Hailey*, 2020 WL 4732141 at *4 (quoting *Lohrmann*, 782 F.2d at 1162-63) (internal quotations omitted).

While not dispositive of this motion, it is worth noting that at least two other courts have found triable issues of fact on causation in cases pertaining to boiler technicians working on boilers made by Foster Wheeler. In *Dennis v. Air & Liquid Systems Corp.*, the plaintiff served in the Navy from 1966 to 1969, overlapping in service with Plaintiff for two years, as an equipment maintenance worker. 2021 WL 3555720 at *2. He worked primarily on pumps, blowers, valves, and boilers. *Id.* The court found that there was a triable issue of fact on causation, noting that the boilers "physically dominated the boiler rooms," the boilers would have been covered in asbestos-containing insulation, and that cleaning the boiler required replacing asbestos-containing gaskets. *Id.* at *21. In *Hammell v. Air & Liquid Systems Corp.*, the plaintiff was on active duty with the Navy from 1962 to 1964. 2020 WL 5107478 at *1. During his service, he maintained boilers, forced draft blowers, valves, and pumps. *Id.* The court found that Foster Wheeler failed to establish as a matter of law that the plaintiff could not prove causation. *Id.* at *7. The court pointed directly to the plaintiff's testimony that had he been informed about the health hazards of asbestos he would have taken precautions. *Id.*

15

Causation is a very fact intensive issue, and in this specific situation, courts look at whether there is sufficient evidence for a reasonable jury to conclude that the defendant's products were a substantial cause of plaintiff's injuries.  In *Hailey v. Air & Liquid Systems Corp.*, the plaintiff failed to establish causation because he could not link asbestos exposure to any of the defendants' products. 2020 WL 4732141 at *12.  The plaintiff's only fact witness, a shipmate, could not remember what brand of pump or valves they were working on when they breathed in asbestos. *Id.* at *6-12.  Further, the witness could not provide any specificity on how often or how closely the plaintiff worked with the asbestos-containing gaskets. *Id.* at *7. Similarly, the plaintiff in *Chesher v. 3M Co.* failed the substantial exposure test for lack of specificity. 2018 WL 1536573 at *6.  The court found that the plaintiff had not "presented any evidence regarding the actual *amount* of asbestos dust he was exposed to or the *duration* of his exposure." *Id.*

Plaintiff has provided sufficient evidence to establish that Defendant's product exposed him to asbestos.  Unlike the fact witness in *Hailey*, Plaintiff's fact witness clearly stated that the engine room in which they worked had Foster Wheeler boilers. (ECF No. 42-3, 11:16-18.)  He also described one of their job duties as scraping down asbestos that went between tubes on the "fire side" and replacing it with new asbestos. (*Id.* 12:7-10, 19-25.)  He also described replacing asbestos-containing gaskets on the "water side." (*Id.* 13: 3-19.)  Both processes involved the scraping of asbestos, which created dust. (*Id.* 14:25, 15:1-3, 15:12-16.)  Unlike the fact witness in *Hailey*, he was able to describe the how often and how closely Gehant worked with asbestos-containing products.  He claimed that every month or month and a half the boiler technicians would do this maintenance on the fire and water sides. (*Id.* 12:11-16, 14:8-14.)  The boilers would be shut down for thirty to forty-eight hours for maintenance to be done. (*Id.* 12:19-21.) Further, he thought that it took approximately forty-five minutes to clean a gasket. (*Id.* 15:5-8.)

16

Additionally, the boiler technicians had to remove and replace asbestos-containing insulation, which produced dust as well.  (*Id.* 16:5-22.)  As for proximity, the fact witness alleges that three technicians would go inside the boiler as only three people could fit and he describes having to crawl to different parts inside the boiler for maintenance. (*Id.* 13:11-19.)  Plaintiff's expert witnesses also provide estimates of the amount of asbestos fibers released during specific tasks that Gehant would have performed. (ECF No. 42-2, at 19-20; ECF No. 42-5, at 13-21.)  Taken together, the Plaintiff has provided sufficient evidence toward the amount of dust and the amount of exposure such that a jury could determine that asbestos from the boilers was a substantial cause of Gehant's mesothelioma.

There is a triable issue of fact as to whether Defendant's failure to warn Plaintiff about the dangers of asbestos was a substantial factor in causing his injury.

### V. CONCLUSION

For the reasons detailed above, the Court will deny Defendant's Motion for Summary Judgment (ECF No. 40).

An appropriate Order shall issue.

/s/

Roderick C. Young
United States District Judge

Norfolk, Virginia
Date: <u>March 3, 2022</u>